## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **JOSEPH CONDIT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 11-CV-602** |
| | ) | |
| **RAILAMERICA, INC.,** | ) | |
| **a corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## PLAINTIFF'S REPLY TO
## RAILAMERICA'S REPONSE TO MOTION TO REMAND

**I.      As a procedural matter, RailAmerica's removal was improper**

The issues before this court are twofold, one procedural, and one substantive.

The first issue which must be decided is the procedural issue. That issue is simply

stated as: was a claim stated under the FELA and brought in state court, properly

removed to federal court? If this court answers this question in the negative it must

immediately decline jurisdiction and remand this case to state court. The substantive

issue of whether the plaintiff has sufficient proof that he was a railroad worker for

RailAmerica cannot be decided on the merits by this Court because it lacks

jurisdiction to do so.

The procedural issue was decided almost 100 years ago by the United States Supreme Court in a pair of cases.  The Federal Employers Liability Act as passed in 1908 and amended in 1910 contained an express provision against removal from state court to federal court.  One of the first issues decided by the United States Supreme Court was the interpretation of Congress's mandate that no case arising under the FELA brought in state court of competent jurisdiction shall be removed to any court of the United States. In 1915, this issue was addressed in *Kansas City Southern Ry. Co. v. Leslie*, 238 U.S. 599 (1915).  The administrator Leslie filed a wrongful death case arising under the Federal Employers Liability Act in state court. The railroad attempted to remove the case to federal district court alleging diversity of citizenship. The  state refused to allow the removal  citing the non-removability of FELA cases brought in state court. The United States Supreme Court concurred holding that both the language of the FELA and the language of the judicial code "clearly inhibits the removal of a cause arising under the act from a state court upon the sole ground of diversity of citizenship." *Leslie* 238 U. S. 599, 602.  Six months later the issue again arose as to the removability of a FELA claim brought in state court in the case of *Southern Ry. Co. v. Lloyd*, 239 U.S. 496 (1916).  The Southern Railway Company attempted to violate the statutory prohibition against removal alleging jurisdiction based upon diversity of citizenship and fraudulent joinder.  The removal was initially

2

allowed at the state trial court level and affirmed in the Supreme Court of North Carolina. The railroad's claim for removal was based upon diversity of citizenship and an allegation that the plaintiff had fraudulently joined the North Carolina Railroad Company to defeat federal jurisdiction. United States Supreme Court reversed holding that under the earlier *Leslie* decision diversity of citizenship did not give the railroad the authority to remove the action from state court. The court further held that alleging fraudulent joinder did not confer the right of removal. *Lloyd* 239 U.S. 501.

In the near century that has passed since the United States Supreme Court decided the very issues before this court, railroads have persisted in seeking removal in spite of the clear mandate against it. One theory routinely used by railroads to justify removal is that the plaintiff has disguised  the claim as an FELA claim to defeat federal jurisdiction. In such cases, courts have looked to the language of the complaint filed in state court. If the language plainly states a claim under the FELA, then the federal courts lacks jurisdiction to determine the merits of the case. *Fox v. Norfolk and Western Railway Company*, 755 F. Supp. 265, 267 (E.D. Mo. 1991).

In attempting to invoke removal where it does not otherwise exist, railroads frequently attempt to recast the plaintiff's claim as something other than FELA in order to persuade the federal court to assert  jurisdiction. For example in *Norfolk*

3

*Southern Railway Company v. DeMay*, 592 F 3rd 907 (8th Cir. 2010), the railroad attempted to recast a FELA claim as a Longshoreman Harbor Workers Compensation Act claim in an attempt to invoke federal jurisdiction and effect removal.  The court rejected the railroad's revisionist approach to the Plaintiff's claim holding it was not entitled to remove a claim properly plead under the FELA. *DeMay* 592 F 3rd 907, 915. As simply stated by one federal court, "if plaintiff's claim as pleaded is not removable under the principles outlined above the defendant cannot make a claim removable by recharacterizing it." *Edmonds v. Norfolk and Western Ry. Co.*, 883 F.Supp. 89, 92 (S.D. WVa 1995).

In the present case, defendant RailAmerica likewise claims that the plaintiff's claim is removable under diversity of citizenship and fraudulent joinder. RailAmerica alleges that the plaintiffs' claim is somehow disguised in an attempt to evade federal jurisdiction. While Rail America spills a considerable amount of ink repeating its allegation that the plaintiff's claim is disguised, the railroad fails to supply a single sentence describing the true claim beneath the purported disguise. The plaintiff claims that at the time of the accident he was an employee of RailAmerica.  Therefore, given these facts plead,  there are really only two possibilities.  Either the plaintiff has properly stated a claim arising under the FELA by a railroad worker against his railroad employer or the case is merely a case by a worker against an employer. The

latter would be a Worker's Compensation case under state law. Consequently, just as 28 U.S.C. §1445(a) prohibits the removal of an FELA case from state court to federal court, the provisions of 28 U.S.C. §1445(c) prohibit the removal of a state Worker's Compensation case to federal court. Under either scenario, plaintiff's claim is nonremovable pursuant to 28 U.S.C. §1445, divesting this court of jurisdiction to resolve the case on the merits.

## II.     As a substantive matter, sufficient evidence has been shown that the Plaintiff is a RailAmerica railroad worker.

While the plaintiff does not believe that this Court should reach the second and substantive issue of whether Joseph Condit is a railroad worker employed by the railroad RailAmerica, the matter will be discussed briefly for the sake of argument.

It is RailAmerica's burden to demonstrate to this court that the plaintiff's claims are so baseless that there is no doubt or possibility of prevailing on the merits. *Farmer's Bank and Trust v Atchison Topeka and Santa Fe Ry.*, 25 F.2d 23, 29 (8th Cir 1928). Whether RailAmerica is a railroad (a common carrier by rail) turns on considerations of prime importance set forth in *Lone Star Steel Co. v. McGee,* 380 F.2d 640 (5th Cir. 1967). Central among these considerations is whether RailAmerica holds itself out to the public as an operator of a railroad transporting goods for the public. Even without the benefit of discovery, the Plaintiff has presented substantial evidence on this issue. RailAmerica has repeatedly held itself out to the public as a

transporter of goods enjoying common ownership with railroads.  The evidence of this lies, among other places, in RailAmerica's quarterly filings[1], press releases[2] and statements[3] to the Surface Transportation Board which regulates rail mergers and acquisitions.  RailAmerica holds itself out to the public as a large railroad enterprise consisting of many interdependent parts.  Courts have looked to the enterprise as a whole rather than independent stock ownership in determining what is a common carrier by rail.  In the words of the United States Supreme Court in *Southern Pacific Terminal Co., et al. v. ICC, et al.*, 219 U.S. 498, 523 (1911):

> "The record does not present a case of stock ownership merely, or of a holding company which was content to hold. It presents a case, as we have already said, of one actively managing and uniting the railroads and the terminal company into an organized system. And it is with the system that the law must deal, not with its elements. Such elements may,

---

[1] RailAmerica Quarterly Filing of 10/27/2011 ( Exhibit A):
"The Company is subject to claims for employee work-related and third-party injuries. Work-related injuries for employees are primarily subject to the Federal Employers' Liability Act ("FELA")."(p. 13) "RailAmerica is a leading owner and operator of short line and regional freight railroads in North America, operating a portfolio of 43 individual railroads with approximately 7,400 miles of track in 27 states and three Canadian provinces. The Company's principal operations consist of rail freight transportation and ancillary rail services." (p. 6)

[2] RailAmerica Press Release dated 12/6/2011 (Exhibit B):
"RailAmerica. Inc. owns and operates short-line and regional freight railroads in North America, operating a portfolio of 43 individual railroads with approximately 7.400 miles of track in 27 U.S. states and three Canadian provinces."

[3] Fortress Investment Oct 27, 2007 application for the acquisition of the FEC Railroad (Exhibit C):
"RailAmerica is a short-line and regional rail service provider that currently owns and operates, through its freight railroad subsidiaries, approximately 7,800 miles of rail lines in the United States and Canada."

indeed, be regarded from some standpoints as legal entities; may have, in a sense, separate corporate operation; but they are directed by the same paramount and combining power and made single by it."

Whether Joseph Condit is a railroad worker for RailAmerica turns on the issue of control.  Without the benefit of discovery, Plaintiff has produced substantial evidence that RailAmerica exerted and retained control over the manner in which Mr. Condit performed his railroad work.  The manner in which railroad work is performed is controlled by railroad rules.  Those rules are found in the RailAmerica's rule books[4] provided to the Plaintiff.  The RailAmerica rules control how the train is operated, how railroad cars are coupled and uncoupled, how railroad cars are moved from track to track by switching and how the cars are secured once placed on a track.  In short, every significant aspect of the Plaintiff's work is controlled by the rules and failure to abide by the rules may lead to termination.

RailAmerica has submitted the affidavit of John Preston Claytor, the Vice President of Operations and Safety who claims that the rule books are merely used for consistency among RailAmerica subsidiaries.  While that may be RailAmerica's

---

[4] Defendant attempts to recast Plaintiff's focus on railroad rule books (Plaintiff's Evidentiary Submission, Exhibits A and B) as a focus on employee handbooks.  The two are distinct books and should not be confused.  Rule books are required to be promulgated by railroads to define the operating practices of its workers.  49 C.F.R. §217.  Railroad rule books are required to be kept and followed by a worker during the daily performance of his job.  Handbooks are introductory material provided at the beginning of employment and frequently discarded.

position, a jury could easily find control in RailAmerica's claims of consistency.

Such control is apparent in RailAmerica's statement to its employees found in the

employee handbook (page 72):

> To ensure a safe environment for our employees and the communities we serve, **the movement of trains, and maintenance of equipment, track and facilities must be conducted on the basis of carefully designed rules and procedures. Failure to follow these rules and procedures may result in death, injury or substantial financial loss. All employees are expected to be safe, conscientious and dependable, comply with rules,** and display a positive behavior toward teamwork. Management must provide fair and consistent treatment to all employees, using coaching and training prior to achieving desired behavior.

While RailAmerica vehemently denies that Mr. Condit is its railroad worker,

it required Mr. Condit to comply with all the regulations associated with railroad

workers.  By the dictates of RailAmerica's employee handbook, all RailAmerica's

employees are subject to federally mandated drug testing required of railroad workers.

49 C.F.R. §219. (Employee Handbook, p. 76).  It requires rules compliance of

railroad worker's consistent with 49 C.F.R. §217.  In short, RailAmerica requires its

workers to follow all the rules and regulations of railroading.  Once RailAmerica

railroad workers are injured, it disclaims their status as railroad workers and seeks to

deny their rights under the FELA.

## CONCLUSION

The nonremoval statutes were passed in part to reinforce the rights of injured

workers and in part to relieve the burden on the federal court system. Taken to its logical conclusion, RailAmerica's approach would render 28 U.S.C. 1445 a legal nullity. In its place, the federal courts would be put in the position of acting as the gatekeeper to evaluate the validity of any FELA claims filed in state court. All a railroad defendant would have to do is cry "fraudulent joinder" to invoke the procedure. Those FELA claimants whose rights the statute was designed to protect would be thrust into proving the validity of their case, **before discovery has begun.** Such a position is directly contrary to the United States Supreme Court's holding in *Southern Ry. v. Lloyd, supra* almost a century ago when it plainly stated that neither diversity of citizenship nor fraudulent joinder were sufficient grounds to remove an FELA case from state court[5]. Such a position is in direct contravention of the intent of Congress under 28 U.S.C. §1445(a) which plainly states that these claims **may not be removed.**

This the 13th day of December, 2011

Respectfully Submitted,

 /s/ *Stephen M. Tunstall*
Stephen M. Tunstall (TUNSS4180)

---

[5] *Southern Ry. Co. v. Lloyd,* 239 U.S. 496, 501 (1916): "It was therein held that there was no authority to remove such action from the state court to the Federal court because of diversity of citzenship. Nor did the alleged fraudulent joinder of the local defendant in the state court give such right."

Attorney for Plaintiff, Joseph Condit

**OF COUNSEL:**
Stephen M. Tunstall, P.C.
250 Congress Street
Post Office Box 152
Mobile, Alabama 36601
Telephone (251)432-2221
Facsimile  (251)432-2218

## CERTIFICATE OF SERVICE

I certify that on this 13th day of December, 2011, I have filed the foregoing via the Court's CM/ECF System, which will automatically send a copy of the foregoing to attorneys of record in this case, and that I have also sent a copy of the foregoing by United States First Class mail, postage prepaid, on any non-CM/ECF participants listed below:

Turner B. Williams, Esquire
Mark M. Lawson, Esquire
Eric Lee, Esquire
Michael D. Strasavich, Esquire
Attorneys for Defendant, RailAmercia, Inc.
BURR & FORMAN LLP
3400 Wells Fargo Tower
420 North 20th Street
Birmingham, Alabama 35203

Rex W. Slate, Esquire
DONALDSON & GUIT, LLC
505 20th Street North, Suite 1000
Birmingham, Alabama 35203

John M. Gibbs, Esquire
GIBBS & SELLERS, P.C.
108 North Walnut Street
Post Office Box 1276
Demopolis, Alabama 36732

 /s/ *Stephen M. Tunstall*
Stephen M. Tunstall