IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOSEPH CONDIT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:11-00602-KD-N |
| | ) | |
| RAILAMERICA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

A motion to remand and for an award of attorneys fees with costs (docs. 13 and 15) filed by the plaintiff, Joseph Condit, has been referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of the motion, the response in opposition (doc. 20) filed by the defendant, RailAmerica, Inc. ("RailAmerica"), plaintiff's reply (doc. 21), RailAmerica's sur-reply (docs. 22-23), plaintiff's sur-response (doc. 25), and all other pertinent portions of the record, it is recommended that the motion to remand be **granted** and that the motion for an award of fees with costs be **denied**.

I.   Background.

Plaintiff, Joseph Condit, filed this action in the Circuit Court of Wilcox County, Alabama, asserting claims against RailAmerica under the Federal Employers Liability Act ("FELA"), 45 U.S.C. §§ 51-60, and the Automatic Coupler Act, 49 U.S.C. §

20302(1)(A). [1] (Doc. 1-4 at 3).  Plaintiff's claims arise from a work related accident on December 20, 2010, in which "[railroad] cars failed to uncouple causing the train to strike the Plaintiff and pin him in the close clearance with the [adjacent] building." (*Id*. at 4).

On October 21, 2011, RailAmerica removed the action to this Court on the grounds of  diversity jurisdiction under 28 U.S.C. § 1332 because plaintiff is a resident of Alabama ,while defendant is a citizen of its State of incorporation, Delaware, as well as the State in which its principal place of business is located, Florida.  RailAmerica specifically contends that it is ***"not"*** a "common Carrier by railroad" or plaintiff's employer at the time of the accident as required to sustain a FELA claim.  (Doc. 1 at ¶¶ 2-3, 6-7).  On November 2, 2011, RailAmerica filed a motion for summary judgment (docs. 7-9, 11) and therein asserted an entitlement to judgment as a matter of law on the grounds that "there is no genuine issue of fact in this case that RailAmerica is not a 'common carrier by railroad' and that Plaintiff was not employed by RailAmerica at the time of the accident."  (Doc. 7 at 1-2).

On November 21, 2011, plaintiff filed this motion to remand (doc. 13) asserting improper removal because "there is ample evidence from which a state or a federal court could find that RailAmerica is a common carrier by railroad and engages in all of the indicia of railroading, including setting rates, tariffs, switching fees and policies, and

---

[1] The Automatic Coupler Act is part of a Safety Appliance Act, and railroads are liable for violations of the Safety Appliance Act under FELA. *See* Norfolk & Western Ry. Co. v. Hiles, 516 U.S. 400, 408 n.11 (1996); Moore v. Chesapeake & O. Ry. Co., 291 U.S. 205, 210 (1934).

operating railroads to carry goods in interstate commerce." (Doc. 13 at 3-4). Plaintiff also disputes RailAmerica's contention that it is not his employer. (*Id*. at 6-10).

Plaintiff's motion to stay the Court's consideration of RailAmerica's motion for summary judgment was granted on November 22, 2011. (Docs. 14, 16). In addition, plaintiff's motion to stay the parties' obligation to meet and file a planning report pursuant to Fed.R.Civ.P. 26(f) pending resolution of this motion to remand was granted on December 2, 2011. (Docs. 18, 19). The issue regarding the propriety of RailAmerica's removal of this action from the Circuit Court of Wilcox County, Alabama, has now been fully briefed and is ripe for the court's consideration.

II.   Standard of Review.

It is well established that, "[i]n a removal action, the party asserting jurisdiction has the burden of establishing proof of jurisdiction by a preponderance of the evidence." Wiltew v. Parker, 2009 WL 3615041, * 2 (S.D. Ala. Oct. 30, 2009)(emphasis added), *citing* McNutt v. General Motors Acceptance Corp. of Indiana, Inc., 298 U.S. 178 (1936); Lowery v. Alabama Power Co., 483 F.3d 1184, 1210 (11th Cir. 2007), *cert. denied sub nom* Hanna Steel Corp. v. Lowery, --- U.S. ----, 128 S.Ct. 2877 (2008). In a removal action, the burden is upon the defendant. *Id*., *citing* Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921). *See also*, Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1294 (11th Cir. 2008) ("A removing defendant bears the burden of proving proper federal jurisdiction [and] doubts about the propriety of federal jurisdiction should be resolved in favor of remand to state court.") (citation omitted); Friedman v. New York Life Ins. Co., 410 F.3d 1350, 1353 (11th Cir. 2005) ("[i]n removal cases, the burden is on

the party who sought removal to demonstrate that federal jurisdiction exists") (citation omitted).  In addition, "[b]ecause removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand." Holloway v. Morrow, 2008 WL 401305, * 2 (S.D. Ala. Feb. 11, 2008), *citing* University of South Alabama v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999) (explaining that strict construction of removal statutes derives from "significant federalism concerns" raised by removal jurisdiction).  *See also* Russell Corp. v. American Home Assur, Co., 264 F.3d 1040, 1050 (11th Cir. 2001) ("Federal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand.").  "Thus, under § 1446(b), in assessing the propriety of removal, the court considers the document received by the defendant from the plaintiff-be it the initial complaint or a later received paper-and determines whether that document and the notice of removal unambiguously establish federal jurisdiction." Lowery, 483 F.3d at 1213.

    III.    Analysis.

RailAmerica concedes that plaintiff has asserted in his Complaint a claim against it under FELA.  RailAmerica also acknowledges that "28 U.S.C. § 1445(a) ordinarily prohibits removal of FELA claims to federal court." (Doc. 1 at ¶ 7).  Section 1445(a) expressly provides:

> (a) A civil action in any State court against a railroad or its receivers or trustees, arising under sections 1–4 and 5–10 of the Act of April 22, 1908 (45 U.S.C. §§ 51–54, 55–60), ***may not be removed to any district court of the United States***.

28 U.S.C. 1445(a) (emphasis added).  RailAmerica nonetheless argues that plaintiff has fraudulently asserted this claim because RailAmerica is neither plaintiff's employer nor "a 'common carrier by railroad' engaged in commerce" as required for FELA to apply to RailAmerica.  (*Id*. at ¶ 10).

FELA provides, in pertinent part:

> ***Every common carrier by railroad while engaging in commerce***. . . shall be liable in damages to any person suffering injury while he is ***employed by such carrier*** in such commerce, . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier. . . .

45 U.S.C. § 51 (emphasis added).   It is RailAmerica's contention that "[i]f Plaintiff cannot prove either of these elements of a FELA claim, he cannot state a FELA claim against RailAmerica." (*Id*.)   Specifically, RailAmerica maintains that "it is undisputed" that it "is ***not*** a 'common carrier by railroad' and that Plaintiff was ***not*** an employee of RailAmerica; thus, there is no reasonable basis in fact and law to support a claim against RailAmerica under FELA." (Doc. 1 at ¶ 11, emphasis in original).  In support of its argument, RailAmerica points to the following affidavits submitted at the time of removal: (1) Scott Williams, General Counsel of RailAmerica, (doc. 1-1 at 2-7); and (2) Donald Seil, Vice President of RailAmerica Contract Switching Services, a Inc. ("RACSS") , a subsidiary of RailAmerica (doc. 1-2 at 2-6).

In support of his motion to remand, the plaintiff has submitted his own affidavit (doc. 15-2) disputing the contention that RailAmerica is not his employer, and has proffered a number of documents from which it appears that RailAmerica held itself out to the plaintiff as well as the public as being a "common carrier by railroad." [2]  For example, in RailAmerica's quarterly report to the Securities and Exchange Commission and to its investors on October 27, 2011,  referred to as the "Form 10-Q" by RailAmerica (doc. 20 at 10), RailAmerica described itself as follows:

> RailAmerica is **a leading owner and operator of short line and regional freight railroads in North America,** *operating* a portfolio of 43 individual railroads with approximately 7,400 miles of track in 27 states and three Canadian provinces. The Company's principal operations consist of rail freight transportation and ancillary rail services.

(Doc. 15-1 at 8, emphasis added).  In this same certified disclosure, RailAmerica advises its shareholders of RailAmerica's liability for employee injuries:

> The Company is subject to claims for employee work-related and third-party injuries. **Work-related injuries for employees are primarily subject to the Federal Employers' Liability Act ("FELA").**

---

[2] According to the plaintiff, he "applied for a job at a RailAmerica, Inc. office and believed that when hired [he] was working for RailAmerica, Inc., a railroad." (Doc. 15-2 at ¶ 2).  Thereafter he "was trained by RailAmerica, Inc, at what [he] believed to be a RailAmerica, lnc./Alabama Gulf Coast Railway building in Cantonment, Florida."  (*Id*. at ¶ 3).  As part of his "employment, training and preparation for railroad work, RailAmerica gave [plaintiff] railroad rules, operating rules, safety rules and hazard material books which directed and controlled [plaintiff's] everyday railroad work" (*Id*. at ¶ 4) and these documents either refer only to RailAmerica, Inc., including the employee insurance plans, (docs. 15-3, 15-6 and 15-7) or were given to the plaintiff by RailAmerica Ins. (doc. 15-4).  Plaintiff specifically shows that his "Dental benefits were provided by RailAmerica, Inc. Delta Dental plan" (doc. 15-2 at ¶ 11); his "medical benefits were provided by the RailAmerica, Inc. Blue Cross and Blue Shield of Florida Plan" (*Id*. at ¶ 12); and his "life insurance benefits were provided by the RailAmerica, Inc. Prudential Insurance Plan" (*Id*. at ¶ 13).  According to the plaintiff, "[i]n order to get these benefits [he] had to enroll at the RailAmerica website" (i*d*. at ¶ 14).

(Doc. 15-1 at 15, emphasis added).  Plaintiff has also proffered evidence demonstrating that by means of its website, www.railamerica.com, RailAmerica "advertises to provide the switching services performed by the plaintiff" (doc. 13 at 9, *citing* doc. 15-8 at 2-6); "sets the pricing for the switching services performed by the Plaintiff " (*id.*, *citing* doc. 15-9 at 2-5); "charges the customers for the switching services performed by the plaintiff" (*Id.*); holds itself out to the public as an owner and operator of freight railroads, including the State of Alabama, boasting that 'RailAmerica, Inc. owns and operates short line and regional freight railroads in North America, operating a portfolio of 43 individual railroads with approximately 7,400 miles of track in 27 U.S. states and three Canadian provinces" (*Id.* at 9-10, *citing* doc. 15-10).

RailAmerica counters that these documents do not establish that RailAmerica is a "common carrier railroad . . . [or that] RailAmerica actually had any control over [plaintiff's] work."  (Doc. 20 at 9).   Rather, RailAmerica contends that, because any reference in the Form 10-Q to RailAmerica simply "includes the accounts of . . . ***all of its subsidiaries ('RailAmerica' or 'Company' )*** (doc. 20 at 11, emphasis in original), such does not establish that RailAmerica held itself out to the public as being "a common carrier."  RailAmerica also contends that "the  Employee Handbook given to Plaintiff, like the Form 10-Q relied on by Plaintiff . . ., bears the caption "RailAmerica, Inc. ***and participating subsidiaries***"  (doc. 20 at 13, emphasis in original).  In support of RailAmerica's arguments, it proffers, *inter alia*, the affidavit  of Kathie Maness, the Director of Human Resources of RailAmerica Operations Support Group, Inc.,

presumably another of RailAmerica's subsidiaries.  (Doc. 20-1 at ¶ 2).   Ms. Maness testifies that:

> The Form I-9, Employment Eligibility Verification signed by Mr. Condit on July 15, 2010 says that the 'Business or Organization Name and address' for the person certifying that Mr. Condit's employment was 'RCS2-McMillian 734 Dixon Road, Monroeville, AL 36460.'  'RCS2-McMillian' is reference to RACSS.

(Doc. 20-1 at ¶ 3).  A review of this Form I-9 establishes that it is simply a verification that plaintiff has sworn that he is "[a] citizen or national of the United States."  (Doc. 20-2).  Although the "Wage Schedule" referred to by Ms. Maness (doc. 20-1 at ¶ 4, *citing* doc. 20-3) does indicate that plaintiff's employer is "RailAmerica Contract Switching," no documentary evidence has been proffered to establish that this entity is separate and distinct from RailAmerica, Inc.  In contrast, other documents, including the "New Hire Payroll Form" referred to by Ms. Maness (doc. 20-1 at ¶ 5, *citing* doc. 20-4) set forth at the top of the document, more prominently than any other information on the form, the designation "RailAmerica."   In addition, although plaintiff signed an "ACKNOWLEDGEMENT" that he received a copy of the "RailAmerica, Inc. Contract Switching Services Handbook" as stated by Ms. Maness (doc. 20-1 at ¶ 6, *citing* doc. 20-5),  Ms. Maness acknowledges that "the same text is used in the employee handbooks of all RailAmerica subsidiaries" (doc. 20-1 at ¶ 7) and the document itself refers to "RAILAMERICA, INC. & PARTICIPATING U.S. SUBSIDIARIES" collectively therein as "Company" (doc. 20-6 at 2).  By contrast, the "Air Brake & Train Handling Rules" (doc. 15-3) under which plaintiff was required to operate (doc. 15-2 at ¶ 4), sets

forth at the top of the title page a very prominent designation of "RailAmerica,Inc." and "Florida East Coast Railway" but contains no reference to subsidiaries (doc. 15-3 at 2). Similarly, the "Code of Business Conduct and Ethics For Directors, Officers and Employees" under which plaintiff was required to work or be subject to disciplinary action (doc. 15-2 at ¶ 10, *citing* doc. 15-6), contains no designation of any entity other than RailAmerica (doc. 15-6 at 5 and 19).

It appears to the undersigned that RailAmerica seeks to have this Court declare, not that plaintiff has fraudulently disguised a removable claim as a FELA claim but that plaintiff's FELA claim is without merit. Apart from this challenged FELA claim, RailAmerica cites to no claim asserted by the plaintiff that would otherwise vest this Court with jurisdiction. In other words, although RailAmerica argues repeatedly that plaintiff's FELA claim is "fraudulently joined to avoid removal" (doc. 20 at 3-9; doc. 23 at 1-4), unlike all of the cases relied upon by RailAmerica in this case, RailAmerica has not described what it contends *is* the true claim being asserted by the plaintiff which is cognizable in this Court.

For example, RailAmerica contends that <u>Yawn v. Southern Ry. Co.</u>, 591 F.2d 312, 316 (5th Cir. 1979), a case relied upon by the plaintiff, actually supports its position because it addresses "the circumstances under which a FELA case may nonetheless be removable to federal court on the ground of fraudulent joinder":

> ***[W]here the allegations of the complaint are made in a fraudulent attempt to evade removal, the case is removable and should not be remanded to state court***. * * * The railroads assert that these employees artfully pleaded a FELA cause of action in order to avoid the grievance procedures mandated by the Railway Labor Act.

9

> However, *mere assertion* of fraud is not sufficient to warrant removing the case to federal court. Moreover, the assertion that the provisions of the Railway Labor Act relate to matters of substance and not form cannot obscure the fact that the "substance" of these complaints is an action alleging physical injury caused by the railroads' negligence.

(Doc. 20 at 4, *quoting* Yawn, 591 F.2d at 316-17 (emphasis and case citations omitted as in RailAmerica brief). While RailAmerica chides plaintiff [3] for omitting this quotation, RailAmerica itself ignores the fact that, in Yawn, the issue was whether, as alleged by the railroad, the employees "artfully pleaded a FELA cause of action in order to *avoid the grievance procedures mandated by the Railroad Labor Act*," - -a removable claim. It

---

[3] RailAmerica also criticizes (doc. 23 at 2) plaintiff's reference in his reply brief (doc. 21 at 2) to Kansas City Southern Ry. Co. v. Leslie, 238 U.S. 599 (1915), because it "does not address fraudulent joinder of FELA claims at all." It is true that Leslie simply declared that a FELA claim was not removable despite diversity of the parties. As plaintiff points out, however, the Supreme Court cited Leslie six months later when it ruled in Southern Ry. Co. v. Lloyd, 239 U.S. 496, 501 (1916), that removal was properly denied not only because an allegation of fraudulent joinder of a resident defendant does not make a FELA claim removable but neither did an allegation "that the injury did not happen in interstate commerce." In addition, RailAmerica itself relied on a case which did not involve a FELA claim at all but simply involved the grant of a motion to dismiss filed by the *fraudulently joined* resident defendant. (Doc. 20 at 6-7, *citing/quoting*, Lansdell v. American Home Products Corp., 1999 WL 33548541, *2-3 (N.D. Ala. Oct. 26, 1999). RailAmerica does not claim that it was fraudulently joined to defeat diversity jurisdiction but, instead, claims that plaintiff fraudulently asserted a FELA claim against it. Consequently, the case at bar resembles more closely another case cited by RailAmerica (doc. 23 at n. 1) in which the Supreme Court held that a FELA case did not become removable when the plaintiff at trial failed "to prove his allegation that the deceased was employed in interstate commerce when he was injured" because "a case arising, as this one does, under a law of the United States is removable or not, when it is commenced (there being no claim of fraudulent attempt to evade removal), is to be determined by the allegations of the complaint or petition and that if the case is not then removable it cannot be made removable by any statement in the petition for removal or in subsequent pleadings by the defendant." Great Northern Ry. Co. v. Alexander, 246 U.S. 276, 281 (1918). The Supreme Court also emphasized that "a case, arising under the laws of the United States, nonremovable on the complaint, when commenced, cannot be converted into a removable one by evidence of the defendant or by an order of the court upon any issue tried upon the merits, but that such conversion can only be accomplished by the voluntary amendment of his pleadings by the plaintiff or, where the case is not removable because of joinder of defendants, by the voluntary dismissal or nonsuit by him of a party or of parties defendant." 246 U.S. at 282. As applied to the case at bar, RailAmerica admits that plaintiff's FELA claim is nonremovable but nonetheless seeks to convert it into a removable claim by a proffer of evidence on which it seeks a ruling from this Court on the merits. Such is simply impermissible.

10

thus appears that the railroad in Yawn did not challenge the FELA claim on the merits but on the grounds that plaintiff merely disguised an otherwise removable claim by pleading it as a FELA claim.  RailAmerica does not contend that plaintiff herein has fraudulently disguised an otherwise removable claim  as a FELA  claim.

Similarly, the court in Fox v. Norfolk & Western Ry. Co., 755 F.Supp. 265, 267 (E.D. Mo. 1991), concluded that plaintiff's claim arose under FELA and was not a removable Railroad Labor Act claim as alleged by the railroad.  The Fox court not only granted plaintiff's motion to remand but denied the railroad's motion to dismiss which was based on the contention that "plaintiff has not alleged several of the elements necessary to support a FELA claim for emotional distress."  755 F.Supp. at 267.  The Fox court specifically held:

> Because FELA claims are not removable, this Court *268 is without authority otherwise to address the merits of plaintiff's claim or defendant's contention that plaintiff has not stated a FELA claim sufficient to withstand a motion to dismiss. Accordingly, defendant's motion to dismiss will be denied without prejudice to refiling upon remand.

755 F.Supp. at 267-68.  RailAmerica  argues that "it is unclear whether the district court [in Fox] even considered fraudulent joinder" (doc. 23 at 2).  To the contrary, the district court in Fox  opines that defendant's contention "that this action was properly removed because plaintiff's invocation of the FELA is insufficient ***to disguise the claim's true identity*** as a minor dispute within the meaning of the Railway Labor Act."  755 F.Supp. at 267 (emphasis added).

RailAmerica also contends that three other cases relied upon by the plaintiff "do ***not*** change the fact that RailAmerica may properly remove a FELA claim on the grounds

of fraudulent joinder and simultaneously argue that it is not a proper FELA defendant." (Doc. 20 at 9)  For example, RailAmerica concedes that the court remanded the FELA claim in Gowdy v. Norfolk Southern Ry. Co., 2007 WL 1958592 (S.D. Ill. July 2, 2007), because "the record leaves open the possibility that both [the defendant railroad and a nonparty company employing plaintiff] substantially controlled Gowdy's work related activities."  (Doc. 20 at 8, *citing* Gowdy, at 5).   RailAmerica then extrapolates the Gowdy court's citation to Hammond v. Terminal R.R. Ass'n of St. Louis , 848 F.2d 95 (7th Cir. 1988), for the proposition that "it *is* appropriate for the district court to look beyond the complaint and consider other evidence in ascertaining whether jurisdiction lies."  (Doc. 20 at 8, *citing* Gowdy,  at 3, emphasis in original).  Although the Gowdy court applied the Hammond principle and looked beyond plaintiff's complaint  to consider "evidence that sheds light on the facts which existed on [] the date this case was removed"  (*4), the court also cited with approval the Seventh Circuit's "reluctance" to decide the merits of plaintiff's claim in Williams v. Shell Oil Co., 18 F.3d 396, 400 (7th Cir. 1994), as expressed in this manner:

> ... the issue of whether the plaintiff was a loaned servant is a close question. Although there is strong evidence supporting the district court's conclusion that ANCO [the non-railroad entity] was the plaintiff's sole employer, we are hesitant to conclude that as a matter of law because *it is such a fact intensive question*.

Gowdy, 2007 WL 1958592 at *6, *quoting* Williams, 18 F.3d at 400 (emphasis added in Gowdy).  It was upon that basis that the Gowdy court concluded and ordered as follows:

> Because Gowdy's complaint properly pleads all the elements of a FELA claim and the record before this Court (beyond the complaint) leaves

> open the possibility that Gowdy has a cognizable FELA claim, the Court cannot ignore the removal bar contained in 28 U.S.C. § 1445.
>
> C. *Conclusion*
>
> Gowdy's properly pled FELA claim (taken together with the evidence appropriately considered in this jurisdictional analysis) precludes removal of this action under 28 U.S.C. § 1445. Because removal was not proper, this Court **GRANTS** Gowdy's motion (Doc. 21) and **REMANDS** this case to the Circuit Court of Madison County, where the issue of his status under FELA can be fleshed out thoroughly.

*Id*. at * 6 (emphasis in original).  Similarly, RailAmerica argues that Smith v. Norfolk Southern Ry. Co., 2009 WL 960684 (C.D. Ill. April 8, 2009), and Fritchman v. Norfolk Southern Ry. Co., 2009 WL 722301 (E.D. Pa. Mar. 17, 2009), are distinguishable despite the ruling in each case that the evidence demonstrated a possibility that plaintiff had asserted a cognizable FELA claim.  With respect to Smith, RailAmerica simply argues that "[t]here, unlike here, the plaintiff specifically alleged that he was a 'borrowed servant of defendant'."  (Doc. 20 at 8).  With respect to Fritchman, RailAmerica argues that the "unrefuted affidavit from the plaintiff" distinguishes the case from the case at bar.  Despite RailAmerica's contentions, the case at bar is not distinguishable from Gowdy, Smith and Fritchman.  A review of the evidence presented in this case similarly establishes that plaintiff has properly pled all the elements of a (non-removable) FELA claim and the issue regarding whether RailAmerica is a "common carrier" and is plaintiff's employer should be "fleshed out thoroughly" in the state court.

## CONCLUSION

For the reasons stated above, it is recommended that plaintiff's motion to remand (doc. 13) be **GRANTED**.  RailAmerica has failed to satisfy its burden of proving the

13

existence of federal jurisdiction.  Plaintiff has properly pled all the elements of a FELA claim and the record leaves open the possibility that RailAmerica is not only a "common carrier" by virtue of having held itself out to the plaintiff and public as such, but that it is also plaintiff's employer within the meaning of FELA.  Those issues go to the merits of plaintiff's FELA claim and should be determined by the Circuit Court of Wilcox County, Alabama, following remand.

It is further recommended that plaintiff's motion for an award of attorneys fees with costs incurred in connection with its motion to remand be **DENIED**.  It cannot be said that RailAmerica's arguments were "wholly unsupported by law or fact" as argued by the plaintiff.  (Doc. 13 at 14-15).  It is also clear that, to the extent plaintiff would seek reimbursement for costs incurred to obtain evidence that RailAmerica is his employer and a "common carrier," such evidence is otherwise necessary to prosecute his claim.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**Done** this   24th   day of January, 2012.

/s/ Katherine P. Nelson
KATHERINE P. NELSON
UNITED STATES MAGISTRATE JUDGE

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

**Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within [fourteen] days[4]  after being served with a copy of the recommendation, unless a different time is established by order."  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party=s arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

Transcript (applicable where proceedings tape recorded).  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this   24th    day of January, 2012.

/s/ Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE

---

[4] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).